JAY D. BOWEN, an Infant, by HILA A. BOWEN, his Guardian, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant. ·

*Negligence — when plaintiff is excused from looking both ways before crossing a railroad track — what testimony of a physician is not speculative.*

Upon the trial of an action brought to recover damages resulting from alleged negligence, it appeared that, as the plaintiff, who was on a highway going north, reached a railroad track which crossed the highway at right angles, he saw a freight train approaching from the east and waited for it to pass, and when what he supposed was the rear car had passed, he stepped on to the track and was struck by a detached car which was following at a short distance in the rear of the cars connected with the engine.   This car had been detached while the train was in motion, so that by its momentum it might pass on to a switch on the north side of the track and some distance west from the center of the highway.

It further appeared that the plaintiff was not aware of this method of running cars on to that switch; that there was no one at the crossing, nor was any signal given to warn persons on the highway that a detached car was following the train; that his attention had been diverted by a salutation from the fireman in the cab of the engine, and that he continued looking in the direction in which the train was moving until he observed the passage of the car in the rear of those attached to the engine, when he proceeded to cross the track and was struck by the detached car.

*Held,* that the ordinary rule which requires the traveler at a crossing to look both ways before proceeding to cross a railroad track was not necessarily applicable,

for the reason that the plaintiff had no reasonable ground to apprehend danger when he saw the train pass and stepped on to the track in the rear of it, and that the question of the defendant's negligence was properly submitted to the jury.

A physician and surgeon, called as a witness for the plaintiff, who at the time of the accident was seventeen years of age, and in vigorous health, testified that he attended the plaintiff shortly after the injury, and that he had examined him at different times thereafter, and stated the plaintiff's condition and gave evidence tending to prove that his impaired physical condition and the deformity of some of the members of his body were attributable to the injury in question, to which defendant's counsel objected on the ground that such evidence was speculative.

*Held*, that it was competent to prove that such consequences might be attributable to the injury, and that there was no error in the reception of such evidence.

Appeal by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Niagara on the 20th day of March, 1895, upon the verdict of a jury rendered after a trial at the Niagara Circuit, and also from an order entered in said clerk's office on the 20th day of March, 1895, denying the defendant's motion for a new trial made upon a case and exceptions.

*Charles A. Pooley*, for the appellant.

*S. E. Filkins*, for the respondent.

Bradley, J.:

There is substantially no conflict in the evidence as to the circumstances under which the plaintiff's injury was occasioned. He was upon the highway going north, and as he came to the track of the Rome, Watertown and Ogdensburg railroad, a single-track road, which crossed the highway at right angles, he saw a freight train approaching from the east, and waited for it to pass, and when what he supposed was the rear car had passed he stepped on to the track and was struck by a detached car which was following at a short distance in the rear of those connected with the engine. This car had been detached while the cars were in motion, so that by its momentum it might pass on to a switch on the north side of the track, and 110½ feet west from the center of the highway. The speed of the train at the time the car was detached, by pulling out the pin

connecting it with the car ahead of it, was variously estimated as at the rate of from four to fifteen miles per hour, and the distance between the detached car and the rear one connected with the engine, as represented by the evidence, was from ten to sixty feet. The alleged negligence of the defendant is in the fact that the running switch was made across the highway. This crossing is near the depot of the station, known as Miller's.

It is not a populous village, and, therefore, the method of moving a detached car across this highway on to the switch may not necessarily be negligence *per se*, as it has been held to be in making a running switch at the intersection of a railroad and a public street in such a village. (*Brown* v. *N. Y. C. R. R. Co.*, 32 N. Y. 597.)

The defendant gave evidence tending to prove that the manner in which it was done at the time in question was not what is termed a running or flying switch, because the train was stopped some distance east of the highway for the purpose of having the movement of the detached car slower than it otherwise would have been at the crossing, and (as the defendant's witness terms it) thus dropping it on to the switch. But the question of the negligence of the defendant was properly submitted to the jury. There was no one at the crossing, nor a signal in any manner given to warn persons on the highway that a car detached from a train was following it. The brakeman upon the car was upon the rear end of it, and so situated that he did not see the plaintiff as he proceeded to go upon the track. These circumstances permitted the imputation of want of due care on the part of the defendant. It would more palpably have been negligence if the occurrence had been in the night time. (*Delaware, Lack. & West. R. R. Co.* v. *Converse*, 139 U. S. 469.) But it was at midday, and the plaintiff would have seen the approaching car if he had looked to the east. He did not do so. This fact gives much force to the charge of his contributory negligence, and must defeat his recovery unless the circumstances were such as to permit the conclusion that such omission on his part was excused. The plaintiff was not aware of this method of running cars on to the switch at that station. His attention was diverted by a salutation from the fireman in the cab of the engine, which salutation he returned, and he continued looking in the direction in which the engine was moving, until he observed the passage of the rear car of those attached to the engine; then, pro-

ceeding to cross the track, he was struck by the detached car. The plaintiff had reason to suppose that the end of the train had passed when he attempted to cross over, and it cannot, as matter of law, be assumed that he had reason to apprehend that a disconnected car may have been following those drawn by the engine, or that another train would so soon succeed that which had passed the place where he stood. The care ordinarily essential to reasonable precaution, which requires the traveler at a crossing to look both ways before proceeding to cross a railroad track, was not, in view of the circumstances, necessarily applicable to the present case, for the reason that there was no reasonable ground to apprehend danger when he saw the train pass and stepped on to the track in the rear of it to go forward. (*French* v. *Taunton Branch R. R.*, 116 Mass. 537 ; *Brown* v. *N. Y. Central R. R. Co.*, 32 N. Y. 597, 603 ; *Duame* v. *Chicago & N. W. Ry. Co.*, 72 Wis. 523 ; 7 Am. St. Rep. 879.)

In delivering the opinion in *Brown* v. *N. Y. Central R. R. Co.*, Judge DAVIS made the remark, somewhat applicable to the situation in the present case, that : " It is asking too much to say that it was negligence as matter of law not to have anticipated that detached cars were following in the rear of the train that had passed." The fact that the plaintiff might have seen the approaching car if his attention had not been attracted to the fireman by their exchange of salutations does not aid the defense. This continued diversion of his attention until he proceeded to cross the track, did not necessarily evince a want of due care, in view of the fact that it was not within his reasonable apprehension that a disconnected car would follow the passing train.

In *Woodard* v. *N. Y., L. E. & W. R. R. Co.* (106 N. Y. 369) the plaintiff's intestate was familiar with the fact that the company was in the habit of shunting or kicking cars down the switch over the crossing on which he received his fatal injury, and it was held that his failure to avoid the accident was attributable to his want of due care.

That case has not necessarily any application to the present one upon the question of contributory negligence, which question, we think, in this case was one of fact and properly submitted to the jury.

A physician and surgeon called as a witness for the plaintiff, having testified that he attended the plaintiff, dressed his wounds, etc.,

shortly after the injury in October, 1893, made an examination of him in April following, and had recently, in September, 1894, examined him, proceeded to state the plaintiff's condition, and gave evidence tending to prove that the impaired physical condition and deformity of some of the members of his body were attributable to the injury in question.

The defendant's counsel took exception to the reception of this evidence as speculative. The plaintiff at the time of the accident was seventeen years of age, in vigorous health and good physical condition. His injury was apparently severe. It was followed by certain conditions of physical impairment. It was competent to prove that they are consequences which may be attributable to the injury, and in view of the fact that such conditions have been the result, the medical opinion is relieved from any imputation that it was speculative.

There was no error in the reception of the evidence. (*Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 44 Hun, 236; 115 N. Y. 61.)

The verdict for $8,000 was quite large, but, in view of the evidence relating to the injury and its consequences, it cannot be said to be so large as to justify the conclusion that the jury were influenced by prejudice or passion in reaching the result.

The view taken is that the verdict is supported by the evidence and that there was no error in the rulings at the trial.

The judgment and order should be affirmed.

LEWIS and DAVY, JJ., concurred; WARD, J., not sitting.

Judgment and order affirmed.